352 So.2d 656 (1977)
Katherine E. LANDRY et al.
v.
PARISH OF EAST BATON ROUGE et al.
No. 59673.
Supreme Court of Louisiana.
November 14, 1977.
Rehearing Denied December 14, 1977.
*657 Joseph F. Keogh, Parish Atty., Fred G. Benton, Jr., Benton, Benton & Benton, Baton Rouge, for defendants-applicants.
Robert P. Breazeale, Van R. Mayhall, Jr., Breazeale, Sachse & Wilson, Baton Rouge, for plaintiffs-respondents.
CALOGERO, Justice.
The Parish Council of the Parish of East Baton Rouge, utilizing the provisions of the applicable street paving improvement statute (R.S. 33:3301-3319 inclusive), undertook to effect the paving of North Street in the City of Baton Rouge. Under the statute municipalities are authorized to improve streets and may levy and collect local or *658 special assessments on real property abutting the improvements sufficient in the amount to defray the cost of such work. R.S. 33:3301.
Since a 1970 amendment to the statute, however, the law has required that each parcel of real estate which is to be assessed be benefited to an amount not less than the proposed local or special assessment. R.S. 33:3306(A).
The required procedures include, in the order which follows, the municipality's adopting a resolution giving notice of its intention to make the proposed improvements (R.S. 33:3302); the holding of an open hearing to consider objections, including the manner of paying for the improvements (33:3302); an ordering of construction of the improvements (33:3303); publication of the notice of intention (33:3303); preparation of plans and specifications (33:3303); advertising for bids (33:3303); and awarding of the contract (33:3304).
Upon award of the contract the municipality may, and upon completion of the work the municipality must, require of the municipality's engineer a:
"certified statement or report, showing in detail, the total cost of the improvements, including street intersections, engineers' and attorneys' fees, and all other expenses incidental to the cost. The report shall also show the amount of the cost chargeable to each lot or parcel of real estate abutting the improvements in proportion that its frontage bears to all of the abutting lots or parcels of real estate to be improved and shall give a brief description of each parcel or lot of real estate with sufficient clearness to identify it; . . ." R.S. 33:3305.
Upon receipt of the engineer's certified statement or report, the governing authority of the municipality is required to review the statement or report, including the proposed local or special assessment, and to make the benefits determination referred to hereinabove. Proposed assessments that are found by the governing authority to have been erroneously assessed or for which the governing authority does not find the required benefit are required by the statute to be deleted from the report. R.S. 33:3306(A).
There follows mailed notice to the property owners concerning the proposed assessment and the method of payment required. R.S. 33:3306(B). After thirty days from the date of the mailing, the governing authority is permitted to adopt an ordinance levying a local or special assessment on each parcel of real estate abutting the street. R.S. 33:3306(C). The municipality may participate in payment of the total costs to the extent the municipality determines. R.S. 33:3318.
The Parish Council of the Parish of East Baton Rouge conducted four public hearings or protest meetings as well as a public hearing in connection with the "participation policy" under R.S. 33:3318. The Council chose to go forward with the street improvements and determined that the parish would contribute fifty percent of the cost of the project with the abutting property owners contributing fifty percent.
Consistent with the statute, and apparently otherwise in compliance with its directives, the Council adopted 1) Resolution No. 10,274 on March 14, 1973 ordering the improvements of North Street; 2) Resolution No. 10,413 on May 9, 1973 receiving the required engineer's report, fixing the assessments at fifty percent of the cost of the improvements, and making the benefits determination; and 3) Ordinance No. 4047 of June 27, 1973, levying the local or special assessment on abutting property owners. The ordinance, charging each property, in proportion that its frontage bears to all of the abutting lots or parcels improved, with the appropriate portion of fifty percent of the project cost, assessed each property owner a sum which, as credited on project completion with an unexpended construction contingency balance, came to $39.31 per front foot.
On June 17, 1973, five days following newspaper publication of the May 9, 1973 resolution and one and one half months before newspaper publication of the June *659 27, 1973 assessment ordinance, the plaintiffs in this litigation (nine of the affected abutting property owners whose assessments total about $20,000) filed suit seeking to have their respective properties deleted from the engineer's report and stricken from the ordinance.
The trial judge found that plaintiffs' petition was not timely filed and sustained defendant's exception of prescription. He went on, nonetheless, to determine on the merits that the assessment ordinance had been adopted in accordance with law. Accordingly, he denied plaintiffs the relief they sought.
Plaintiffs appealed and the Court of Appeal reversed. 343 So.2d 207 (La.App. 1st Cir. 1977). That court concluded that plaintiffs' suit had not prescribed and that the Parish Council had not complied with the dictates of R.S. 33:3306(A) in the adoption of Resolution No. 10,413 and Ordinance No. 4047 because the council did not determine whether "each lot or parcel of real estate to be assessed will be benefited to an amount not less than the proposed local or special assessment." The court was of the view that there was no evidence in the record that "any given benefit adds `X' dollars to the value of the properties sought to be assessed so that the sum total of all of the benefits alleged to flow from all of the improvements equal the amount of the assessment." 343 So.2d at 214. The Court of Appeal in effect found that not only had the council not determined that each lot assessed would be benefited to an amount not less than the proposed local or special assessment, but that the council could not properly have so determined in light of there being no such preponderant evidence before the council or the trial court.
We granted writs on application of the Parish of East Baton Rouge to review that decision of the Court of Appeal. 345 So.2d 57 (La.1977).
Relator first complains that plaintiffs' lawsuit has prescribed and that the Court of Appeal erred in reversing the trial court's judgment in this respect. We disagree, for the Court of Appeal was correct in this ruling. In their lawsuit plaintiffs only question the validity or legality of Resolution No. 10,413 of May 9, 1973 and the Assessment Ordinance No. 4047 of June 27, 1973. The former was not published until July 12, 1973 and the latter until September 6, 1973. Accordingly plaintiffs' lawsuit filed on July 17, 1973 was clearly not later than thirty days from date of publication of the resolution and ordinance questioned by plaintiffs. R.S. 33:3319.
Contrary to plaintiffs' contention, we are also in accord with the Court of Appeal's finding that Resolution No. 10,413 was not defective. The engineer's report, which was presented to the Council and was contained in the minutes in less than comprehensive form, did contain the required identifying descriptions of abutting properties, costs chargeable to each such parcel and other details required of the engineer's report by R.S. 33:3305.
It was the Court of Appeal's finding that the Parish Council had not complied with the dictates of R.S. 33:3306(A) which prompted our granting this writ. Louisiana Revised Statute 33:3306(A) provides:
"Upon receipt of the certified statement or report of the engineer as provided for in the preceding section, the governing authority shall review said certified statement or report, including the proposed local or special assessments, and thereafter shall make a determination as to whether each lot or parcel of real estate to be assessed will be benefited to an amount not less than the proposed local or special assessment. * * * " (emphasis added)
The Parish Council did indeed make the required determination as is evident by the substance of Resolution No. 10,413. That resolution recites in part as follows:
"Upon receipt of the foregoing certified statement or report of the Engineer as provided for in R.S. 33:3305, this Parish Council did review said certified statement or report, including the proposed local or special assessments, and does hereby find and determine that each lot *660 or parcel of real estate to be assessed is to be benefitted to an amount not less than the proposed local or special assessment. In making said investigation, finding, and determination this Council has found to the best of its knowledge, information, and belief that each proposed assessment is true and correct and that the property to be assessed in each instance is benefitted to an amount not less than the proposed local or special assessment therefor." (emphasis added)
The thrust of plaintiffs' argument is that, although the council admittedly passed a resolution incorporating language to the effect that it had made the requisite determination, in fact the council had not made such a determination. The Court of Appeal agreed with plaintiffs, suggesting that inclusion of the verbiage in the resolution may have established a presumption that the council determination was made, but that such presumption is rebuttable. They found that plaintiffs had in fact proven that no determination that each parcel assessed was benefited to an amount not less than the assessment was ever made by the council. Specifically, plaintiffs contend that 1) the Parish Council entertained no evidence on the pertinent issue, 2) the council could not therefore have made an informed actual determination to the given effect and 3) in any event, the abutting properties were not benefited in the required amounts. In support of their first and second contentions above, they rely upon the testimony of two of the plaintiffs who related that they were in attendance at the May 9, 1973 meeting and that no discussion was had relative to any individual lot or the benefits thereto, but that at that meeting the engineer's report as well as the council's resolution which accepted it and made the benefits determination were passed in routine fashion and without discussion. In support of their third contention hereinabove, plaintiffs relied principally upon the testimony of their real estate expert who testified that there were no economic benefits to the property. Plaintiffs in brief additionally rely heavily upon Brill v. City of Grand Rapids, 383 Mich. 216, 174 N.W.2d 832 (1970), wherein the Michigan Supreme Court held that a widening of what had been a twenty-foot wide paved black-top street in an excellent residential district to a through street of forty-four foot paved width for heavy traffic did not confer any benefit on adjacent residential property which was sufficient to justify the special assessment thereof.
Defendant's contention, on the other hand, is that the council did discuss and consider the special benefits which would accrue to the abutting properties as a result of the improvements program, and did in actuality make the benefits determination contained in Resolution No. 10,413. Furthermore, defendants allege that there were benefits commensurate with the assessments to accrue to the properties by virtue of numerous improvements with which the council was intimately familiar, including street widening, drainage, tree wells, lighting and sidewalks, and consequent improvement in fire and police protection.
With respect to plaintiffs' reliance on Brill, defendant contends, and we agree, as did the trial court, that Brill, assuming its rationale is valid, is not dispositive here. While there was an upgrading and widening of an already paved North Street as an integral part of downtown improvements in Baton Rouge, the purpose was not, as in Brill, to accommodate heavier traffic of a "through" nature, nor had the character of a little traversed residential neighborhood been changed to that of a major thoroughfare or highway.
Admittedly, the council did not receive evidence in the nature of expert opinion testimony or otherwise, correlating specific monetary enhancement and street improvements. Such, however, is not made a requirement by R.S. 33:3306. The council need merely determine that the lots to be assessed "will be benefited to an amount not less than the proposed local or special improvement." This they clearly and specifically did. Although we find little merit in defendant's contention that the minutes *661 of the council are not subject to collateral attack, etc., we are equally satisfied that one may not protest that a legislative body has not done that which through its exclusive means of communication (resolutions and/or ordinances) it has proclaimed that it has.
The merit of the council's benefits determination is, of course, a different matter. Was the council correct in its determination? Was that determination the exercise of a legislative or a judicial function? And is that determination reviewable in court?
We believe that the benefits determination, statutorily required of the municipal legislative body, is a legislative act, with admittedly quasi-judicial overtones, and that while it is not totally unreviewable, courts may not upset the determination absent such manifest and palpable abuse of power such that excess of the limits of legislative discretion is evident.[1]
As was noted by the First Circuit Court of Appeal in Olsen v. City of Baton Rouge, 247 So.2d 889 (La.1971), writs refused 259 La. 755, 252 So.2d 454, municipal legislative acts are presumed to be valid and the burden rests with the party who asserts the contrary. A court may not interfere with this legislative function unless it is clearly shown that the legislative body's action is so clearly arbitrary and capricious as to be unreasonable. Nor is the municipal legislative body constrained (by the provisions of R.S. 33:3301 et seq. or otherwise) by the procedural rules relative to evidence and the like normally attendant to judicial proceedings. In the case at hand, while the evidence presented in the district court may arguably have been short of a preponderance that plaintiffs' properties would be benefited to an amount not less than the proposed assessments, we are unable to conclude that the Parish Council for the Parish of East Baton Rouge exceeded its legislative discretion in determining that the abutting properties were to be benefited in the requisite amount.

Decree
For the foregoing reasons the judgment of the Court of Appeal is reversed, and that of the trial court in favor of defendant and against the plaintiffs dismissing the suit at plaintiffs' costs is reinstated.
JUDGMENT REVERSED; TRIAL COURT JUDGMENT REINSTATED.
NOTES
[1] Accord, see Fourmy v. Town of Franklin, 126 La. 151, 52 So. 249 (1910) quoting from Kelly v. Chadwick, 104 La. 719, 29 So. 295 (1901) as follows:

"With the wisdom or unwisdom of special assessments, when ordered in cases in which they are admissible, the courts have no concern, unless there is plainly and manifestly such an abuse of power as takes the case beyond the just limits of legislative discretion."